Chief Judge Desmond.
Defendant appeals from a unanimous Appellate Division affirmance of an order of the Supreme Court denying after a hearing in the former Court of General Sessions defendant’s motion to suppress certain evidence. The challenged evidence was in the form of stolen diamonds which had been seized on August 30, 1960 by New York City police officers acting with agents of the Federal Bureau of Investigation. The officers had no search warrant or warrant of arrest. The gems were part of the loot of a burglary on June 25, 1960 of the Cartier jewelry store in New York City. Defendant-appellant Joseph Coffey was arrested at the time of the seizing of the precious stones and was convicted of burglary, third degree (affirmed by the Appellate Division, 13 A D 2d 410).
Although Coffey’s conviction came before the Supreme Court’s decision in Mapp v. Ohio (367 U. S. 643) his trial counsel had by proper motion preserved for review the question of the constitutionality of the search and seizure which turned up this stolen property. After his appeal had been argued before us we withheld determination thereof so that a motion to suppress might be made. Our opinion (11 N Y 2d 142, 147) included this statement: “If it should turn out to be the fact that the search of this car and of its occupants was incident to a lawful arrest the evidence would apparently be receivable (see People v. Loria, 10 N Y 2d 368, supra, and cases cited therein). There was presented to the Appellate Division and to us an affidavit by one of the F. B. I. agents containing statements which if found to be true might be the basis for holding that this search and seizure were incidental to a lawful arrest.”
*448 The motion to suppress was made, the hearing ordered by us was held and much testimony was taken. The Supreme Court Justice denied the motion in a careful opinion in which he analyzed the proof and the arguments of counsel. He concluded that probable cause for the arrest had been shown, that there was nothing illegal about the co-operation of Federal and local law enforcement officers, that there had not been such a failure to inform Coffey of the cause of the arrest as would invalidate the arrest and (probably the principal question on this appeal) that withholding the identity of the informer did not destroy the reliability of the proof offered as to probable cause and did not on this record constitute error prejudicial to the defendant. With all those conclusions we agree.
The testimony taken at the hearing on the motion to suppress will now be summarized.
The principal witness was Henry Gfilhofer, an agent of the Federal Bureau of Investigation and the person who made the affidavit referred to in our opinion on the earlier appeal in this case. He testified that on August 29, 1960 an informer (name not given) with whom he had previously done business telephoned him to tell him that two men named Coffey and ‘ ‘ Patsy ’ ’ were the Cartier burglars and were trying to dispose of the jewelry stolen from the store and that another man named Kingdon or “Bill” De Normand was also associated in this effort. Gfilhofer said that he made inquiries of other F. B. I. agents who suggested to him that “ Patsy ” was probably one Pasquale Fuca who was known to associate with Joseph Coffey in the neighborhood mentioned by the informer. According to Gfilhofer, he, before talking again to the accuser, learned that Joseph Coffey frequently drove his brother’s 1955 Oldsmobile car and learned also that the Cartier store watchman, Nilsson, had reported to the police that the burglars drove away from the store in a blue and white Oldsmobile about five years old. Gfilhofer, according to his testimony, found from F. B. I. records that a man named De Normand had many years earlier been known to drive a car belonging to a brother of defendant Coffey, that De Normand, Joseph Coffey and Fuca all had criminal records and that the latter two had been arrested together on bur alar v charges.
*449 Further testimony was given by Grilhofer that on the next day (August 30) he met the informer at a restaurant and showed the latter photographs of Coffey, Fuca and De Normand, and that the informer identified the subjects thereof as the three men he had in mind. The informer again told Grilhofer that the Cartier theft had been committed by Joseph Coffey and Fuca and also that the jewelry settings had been destroyed but that the two had the stolen gems in their possession and that he (the informer) had seen the stones. Grilhofer said that he had then checked against earlier information the descriptions of the stones given by the informer and that the descriptions tallied. In Grilhofer’s presence and hearing the accuser made a telephone call in which, as overheard by Grilhofer, the person at the other end of the telephone said that the jewels had not yet been disposed of, that Coffey and Fuca were trying to get $6,000 for them but had been offered a smaller sum, that on that evening another effort would be made to sell them, and that for this purpose Coffey, Fuca and De Normand would all be in the .vicinity of the Brooklyn Paramount Theatre at 7 o’clock on that evening. The informer told Grilhofer that the person talked to on the telephone was Kingdon or “Bill” De Normand. Grilhofer promised money payment to the informer if the information should turn out to be reliable and promised the informer that the latter’s name would not be disclosed. Grilhofer, so he testified, invited New York City police officials to go with the F. B. I. men to the vicinity of the theatre that evening. About a dozen F. B. I. agents and two New York City detectives were in the vicinity of the rendezvous and saw Coffey, De Normand and another man meet there and then drive away from the theatre neighborhood in a blue and white 1955 Oldsmobile. All these officers and agents in several automobiles furnished by the F. B. I. followed this car through Brooklyn and Manhattan streets. The third man later left the car but Joseph Coffey continued to drive, with De Normand as his passenger, until their automobile was stopped at a traffic light, whereupon the two occupants were arrested. The F. B. I. men later paid $400 to their informant for his services.
We turn to the testimony of New York City detectives Kenney and Egner and we summarize the testimony of both as one, because of similarity. The detectives said that on August 30, *450 1960 they were called to F. B. I. headquarters and were told of the informant’s information that Fuca, De Normand and Coffey had the Cartier jewels. That evening the two detectives went to the vicinity of the Brooklyn Paramount Theatre and saw two men whom they recognized from the photographs previously shown them as Coffey and De Normand, and then saw those two and another man get into the blue and white Oldsmobile. The cars containing the detectives followed the Oldsmobile, they saw the third man get out of the Oldsmobile, then proceeded further in the chase until one of the F. B. I. men ordered that there be an arrest, whereupon the two detectives and others, with guns drawn, approached the Oldsmobile car stopped at an intersection and took Coffey and De Normand into custody. There was some discussion about narcotics. One of the detectives took an envelope from De Normand’s pocket and De Normand said that the envelope contained diamonds. Coffey, De Normand and the diamonds were taken first to F. B. I. headquarters in New York City and then to a police station. Next morning both were arraigned in court. The detectives testified that before they heard from the F. B. I. about the informer the New York City police had been looking for a blue and white Oldsmobile of about the vintage of 1955.
Assistant District Attorney Roberts swore at this hearing that during the Coffey criminal trial Gilhofer gave Roberts the informant’s name and Roberts talked to the informant and that later, during the De Normand trial, Roberts talked to the informant and tried, without success, to persuade him to testify for the People. Roberts testified that the informer’s statements to him tallied with Gilhofer’s account.
Several times during this hearing defense counsel by questioning the witnesses and by application to the Justice presiding tried unsuccessfully to get the informant’s name, arguing that he needed this name to check Gilhofer’s testimony and especially in order to prove an alibi as against the story that the informer had seen the jewels before he gave his information. The People asserted a privilege to keep secret the informer’s name on the ground that disclosure might endanger his life.
The first law question is: did this proof support the affirmed finding below that this search and seizure was incident to a lawful arrest? Put differently, the query is whether in arresting *451 Coffey without a warrant the detectives who knew that a felony had been committed had “ reasonable cause for believing the person to be arrested to have committed it Perhaps because People v. Defore (242 N. Y. 13 [1926]) was so long the law, there is little in the New York cases to construe the phrase “ reasonable cause ” (but see Greene v. Fankhauser, 137 App. Div. 124; Gold v. Armer, 140 App. Div. 73; People v. Wilson, 141 N. Y. 185). Most recently we wrote that “‘“probable cause ” * * * imports a seizure made under circumstances which warrant suspicion ’ ” (People v. Lane, 10 N Y 2d 347, 353, quoted from Locke v. United States, 7 Cranch [11 U. S.] 339, 348). A tight, inclusive definition is neither necessary nor desirable. The decisional law in various Federal and State courts is summed up thus (6 C. J. S., Arrest, § 6, p. 596): “ Where an officer, in good faith, believes that a person is guilty of a felony, and his belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise, he has such probable cause for his belief as will justify him in arresting without a warrant.” The substance of all the definitions of probable cause, wrote the Supreme Court in Brinegar v. United States (338 U. S. 160, 175), is “‘a reasonable ground for belief of guilt.’” Surely such ground existed in this instance. G-ilhofer, told by his informant that Coffey and “Patsy” were the burglars and that they and De Normand were trying to sell the loot, learned from other officers that Coffey and Pasquale Fuca were intimates, had been arrested and convicted together several times in the past, that De Normand had a criminal record, that Coffey frequently drove an automobile belonging to his brother and fitting the description of the get-away car, and that De Normand had years before been arrested in an automobile belonging to a relative of Coffey. Furthermore, photos of Coffey, Fuca and De Normand were identified by the informer as pictures of the men he referred to and the informer accurately described the stolen jewels which he said he had seen. Final confirmation came from the telephone conversation on which Gilhofer listened in and in which the theft and proposed sale were discussed and information given which turned out to be accurate that Coffey, Fuca and De Normand (or some of them) would meet that evening at a certain corner in Brooklyn. Coffey and De Nor *452 mand arrived there (see Spurlock v. United States, 295 F. 2d 387) in an automobile answering the description of the car used in the burglary. All this added up to “ probable cause ” and much more.
The defense argues that all of this proof should, however, be held insufficient because the informer’s name was kept secret from the defense with the result that neither he nor his story could be investigated. Of course, hearsay including material obtained from informers is admissible on a hearing like this and under proper circumstances may be received even when the informer himself does not testify (Draper v. United States, 358 U. S. 307). It must be kept in mind that the present inquiry is not as to defendant’s guilt but as to the sufficiency for arrest purposes of the grounds for the arresting officer’s belief that he was guilty. Simple, untested rumor is not ground enough nor, we will assume, is untested information from a person of no established reliability (Rodgers v. United States, 267 F. 79, 85) or suspicion alone (Henry v. United States, 361 U. S. 98). Substantiation of information can come either from the informer’s own character and reputation or from the separate, objective checking of the tale he tells. (Willson v. Superior Ct., 46 Cal. 2d 291). We are left in the dark as to who this informer was but the fact of his existence and of his informing was fully testified to, fully corroborated by the prosecuting attorneys and found by the courts below. Before the arrest the principal elements of his story were checked out and found plausible. At that point — and regardless of who or what the informer was — enough had been presented to agent Grilhofer to induce in him a rational belief that Coffey was one of the burglars.
Since the showing of probable cause was thus adequate, the People’s refusal, approved by the trial court, to name the informer was not error unless by making a fair hearing impossible it seriously prejudiced the defense. Defendant argues that nondisclosure prevented cross-examination of the informer or proof that he never existed or never saw the jewels or was merely selling gossip or tavern rumors. The People as their reasons for concealment cite Grilhofer’s promise to the informant, the danger to the informer of publicizing his name and the full corroboration of the information supplied to the F. B. I. agent. As the Supreme Court Justice described it: “The *453 reliance was upon independently verified items of information in this matter together with several items of direct knowledge, the combination making a consistent pattern for a finding of probable cause. ’ ’ There is no hard and fast rule as to disclosure. ‘ ‘ The problem is one that calls for balancing the public interest in protecting the flow of information against the individual’s right to prepare his defense ’ ’ and the answer ‘ ‘ must depend on the particular circumstances of each ease, taking into consideration the crime charged, the possible defenses, the possible significance of the informer’s testimony, and other relevant factors ” (Roviaro v. United States, 353 U. S. 53, 62, the leading authority). When, as here, the person whose name is held back is a mere transmitter of information and not in any sense a competent witness as to the crime itself and when there is, as there is here, strong and dependable proof of the accuracy of his information, “ proper balance ” makes nondisclosure appropriate (see People v. McShann, 50 Cal. 2d 802).
Appellant argues that his arrest was illegal in that there was no compliance by any of the officers with the requirement of section 180 of the Code of Criminal Procedure that when arresting a person without a warrant the officer must inform the arrested person of the cause of the arrest. No such information was given Coffey, at least explicitly, although the circumstances including the presence of the diamonds suggest that Coffey must have known why the car was stopped and why he and De Normand were taken into custody. There is some doubt as to whether failure to obey the command of section 180 voids an arrest (see discussion in Squadrito v. Griebsch, 1 N Y 2d 471) to the extent of making seized evidence inadmissible. We need not now announce that failure of an arresting officer to inform as to cause will never make an arrest illegal (see discussions in People v. Cohan, 44 Cal. 2d 434, fn. p. 442; in State v. Smith, 37 N. J. 481, 491, and in Squadrito v. Griebsch, 1 N Y 2d 471, 479, supra). It is enough in this case to hold that on the whole picture Coffey had for our present purposes sufficient notice as to the cause for his capture and detention (see, also, Code Grim. Pro., § 813-e, as to a person ‘ ‘ claiming to be aggrieved by an unlawful search and seizure ”).
The People would have us say that Coffey lacks standing to complain of the search since it was De Normand’s pockets that *454 yielded the stolen diamonds. In a .sense we passed on that objection when we ordered this hearing. And the point is academic anyhow. Since we are holding that the search was not unlawful it does not now matter who moved to have it held unlawful.
Other points briefed by defendant need no discussion.
The order now on appeal should be affirmed. On the former appeal (from the judgment) as to which we withheld decision (11 N Y 2d 142) there should be an affirmance.