The **UNITED STATES** of America, ex rel. **William LUPO,** Appellant-Petitioner,

v.

**Edward M. FAY,** Warden of Green Haven, Stormville, New York, Appellee-Respondent.

**No. 360, Docket 28211.**

United States Court of Appeals Second Circuit.

Argued March 17, 1964.

Decided June 9, 1964.

John C. Lankenau, New York City, for appellant-petitioner.

Barry Mahoney, Deputy Asst. Atty. Gen., (Louis J. Lefkowitz, Atty. Gen., of the State of New York, on the brief), (Samuel A. Hirshowitz, First Asst. Atty. Gen., and Ronald J. Offenkrantz, Asst. Atty. Gen., of counsel), for appellee-respondent.

Before FRIENDLY, HAYS and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

This is a habeas corpus proceeding, in which petitioner seeks to set aside his 1958 conviction in the Kings County Court on charges of grand larceny first degree (as a participant in a payroll robbery on December 7, 1956) and grand larceny second degree (in connection with the theft of an automobile on December 6, 1956). Judge Palmieri discharged the writ without a hearing, on grounds that the relator had failed to exhaust his state remedies, and thereafter granted a certificate of probable cause.

Although the appeal presents the exhaustion issue,[1] and also the question of the "retroactivity" of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), in the view which we take of this case it is not necessary to decide them, except for one point to be touched on later. For even assuming that we were to decide these questions in relator's favor, we believe that the facts alleged in his petition are not such as to establish a violation of his rights under the Fourteenth Amendment.

Lupo's sole claim is that $100 in one dollar bills was unlawfully seized from his person by the police when they arrested him on December 7, 1956, and that this currency was introduced in evidence at his trial. In his petition for certiorari to the Supreme Court, from the affirmance of his conviction, which he later annexed to his petition for the writ of habeas corpus, Lupo set forth the undisputed evidence as to the circumstances of his arrest, and he does not now challenge this account in any way.

His account is as follows: At about 2 p. m. on December 6 Lieutenant Averill and Detective Ringswald of the New York City Police Department were proceeding down Broadway in Brooklyn, in a police car, when they observed Lupo enter a black 1950 Oldsmobile, license plate No. 3K4490 and take the driver's seat. He drove away and, although the police tried to follow his car, they lost sight of it in traffic. They later found it parked on a Brooklyn street, unoccupied. The policemen later verified that the Oldsmobile had been stolen, and Lieutenant Averill ordered surveillance maintained, which was done from 2:35 p. m. on December 6 until about noon on December 7. About noon on the 7th, Lieutenant Averill observed Lupo enter the Oldsmobile, remain several minutes, emerge and disappear again. Thereafter, about 2:25 p. m. he saw Lupo, one D'Antonio and one Bruno drive off in the Oldsmobile and disappear in traffic. At about 3 p. m. on the 7th, two payroll messengers were robbed in front of 1529 Dean Street, Brooklyn, as they attempted

---

1. After the trial, Lupo appealed to the Appellate Division, Second Department, which affirmed the judgment on April 10, 1961. People v. Lupo, 13 A.D.2d 684, 215 N.Y.S.2d 727. His motion for reargument of the appeal, on grounds other than the search and seizure issue was denied on May 15, 1961. 13 A.D.2d 803, 217 N.Y.S.2d 586. He applied for leave to appeal to the Court of Appeals, but this was refused on June 20, 1961, one day after the decision in Mapp v. Ohio. Thereupon, he again moved for reargument of the appeal in the Appellate Division, on the basis of Mapp, which was denied on Sept.

18, 1961. 14 A.D.2d 697, 219 N.Y.S.2d 787. On October 6, 1961, he applied to Judge Fuld in the New York Court of Appeals for reargument of his motion for leave to appeal, on the basis of Mapp, which was denied by letter on October 25, 1961. Lupo then petitioned for certiorari to the United States Supreme Court, which was denied. Lupo v. New York, 369 U.S. 807, 82 S.Ct. 649, 7 L.Ed.2d 553 (1962); 369 U.S. 823, 82 S.Ct. 235, 7 L.Ed.2d 787 (1962). He then filed his petition for a writ of habeas corpus in the District Court, without seeking a writ of error *coram nobis* in the state courts.

to park a car there. The two thieves drove off in the same car in which Lupo had been seen. Only a few minutes thereafter detectives under Averill's command saw D'Antonio and Bruno leave a taxicab and enter Bruno's car, a Cadillac, parked on Park Avenue in Brooklyn. As the police drove up, there was an exchange of gunfire as the result of which Bruno was fatally wounded. D'Antonio was also wounded, but he recovered and was tried and convicted along with Lupo. A sizable portion of the stolen payroll was found in Bruno's car. Two of the detectives, Ringswald and Gottlieb, who participated in the arrest of D'Antonio and Bruno then proceeded to Lupo's residence. Less than an hour later, Lupo and another man left the house, entered Lupo's Pontiac automobile, and drove off. At the nearest intersection, one of the detectives with gun drawn, ordered the car to stop and the occupants to emerge. The detectives searched Lupo, and found in his trouser pocket $447 in currency, including the $100 in singles that were later introduced into evidence at the trial and identified as part of the stolen payroll.

The question thus comes down to whether Lupo's arrest without a warrant was legal, since it is evident that the accompanying search of his person must have been valid if the arrest was. The legality of an arrest by city policemen is to be determined in the first instance by applicable state law, in this case section 177 of the New York Code of Criminal Procedure. Application of this law is to be denied only if it violates the Fourth and Fourteenth Amendments to the Constitution. Ker v. California, 374 U.S. 23, 37, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

The statutory authorization for arrest by a peace officer "when a felony has in fact been committed, and he has reasonable cause for believing the person to be arrested to have committed it" satisfies constitutional requirements. "Reasonable cause" and "probable cause" may have slightly different connotations but the New York courts have given the statute a proper gloss. See, e. g., People

v. Loria, 10 N.Y.2d 368, 373–374, 223 N.Y.S.2d 462, 179 N.E.2d 478 (1961).

We believe that, judged by any reasonable constitutional standard, probable cause existed for the arrest of Lupo for either of the felonies for which he was ultimately indicted, and that this appears on the face of his own petition. With regard to the automobile theft, the police knew that the Oldsmobile had been stolen, and had seen Lupo enter the car on three occasions within two days and drive it on two. The recent, exclusive and unexplained possession of a stolen article is sufficient to raise an inference, on trial, that the possession was guilty. In the light of this "ancient rule" of evidence, Battaglia v. United States, 205 F.2d 824 (4 Cir. 1953), we cannot say that, where arresting officers have knowledge of the theft and the possession, arrest of the possessor lacks probable cause.

Similarly, the police had probable cause to arrest Lupo as an accessory to the payroll robbery. He had been seen in the car used as the getaway vehicle on several occasions on the same day as the robbery, and had been in the company of the two robbers, D'Antonio and Bruno, in that car less than half an hour before the robbery took place. Reasonable men might surely conclude from these observations that Lupo was as much a part of the unlawful plot as the men who actually brought off the crime.

Appellant's last argument for reversal presents a different type of problem. Claiming that he was not informed at the time of his arrest of the reason for it, he asserts that this violation of section 180 of the New York Code of Criminal Procedure voided the arrest and made the accompanying search unlawful, even if probable cause existed for the arrest. As Judge Palmieri noted in his opinion dismissing the writ, this argument was never specifically presented to either the Court of Appeals or the Appellate Division on Lupo's motions to reargue their affirmances of his conviction. It is obvious that the argument raises at least two problems: first, whether the New

York courts would hold an arrest invalid for failure to observe the requirements of section 180, and, if so, whether such an irregularity in effecting an arrest otherwise justified by probable cause would require us to say that the concomitant search was unconstitutional.[2] We agree with Judge Palmieri that the state courts should have an opportunity to pass on the former question before the constitutional issue is reached, assuming appellant can prove his contention. As yet, there is no definitive construction of the effect of a violation of section 180 on an arrest in this situation. See People v. Coffey, 12 N.Y.2d 443, 453, 240 N.Y.S.2d 721, 727, 191 N.E.2d 263, 267 (1963). We cannot assume, as appellant argues, that New York's writ of *coram nobis* will not lie. United States ex rel. Emerick v. Denno, 328 F.2d 309 (2 Cir. 1964). The situation differs from United States ex rel. Martin v. Murphy, 319 F.2d 897 (2 Cir. 1963), judgment vacated and case restored to calendar after denial of state *coram nobis,* where the issue had been fully litigated in the criminal trial.

The court expresses its thanks to John C. Lankenau, Esq., assigned counsel on this appeal, for his effective presentation of appellant's case.

Order dismissing writ of habeas corpus affirmed.

2. The question here differs from that raised in Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), i. e., whether officers armed with a warrant must give notice of their authority and purpose before breaking into a private house.