**UNITED STATES** of America ex rel.
Phillip **EIDENMULLER**, Relator,

v.

**Hon. Edward M. FAY**, as Warden, Green Haven State Prison, Stormville, New York, Respondent.

United States District Court
S. D. New York.

April 13, 1965.

Phillip Eidenmuller, pro se.

Louis J. Lefkowitz, Atty. Gen., of New York, for respondent. Lillian Z. Cohen, Deputy Asst. Atty. Gen., of counsel.

WYATT, District Judge.

This petitioner for a writ of habeas corpus (28 U.S.C. § 2241), Phillip Eidenmuller, is in the custody of the penal authorities of New York serving at Green Haven Prison, Stormville, Dutchess County, New York, a sentence imposed on him on October 6, 1961, by the former Queens County Court after conviction by a jury of robbery (first degree), grand larceny (first degree), and assault (second degree). Petitioner was sentenced as a second felony offender to a term of from fifteen to thirty years. On appeal, the judgment of conviction was unanimously affirmed. 20 A.D.2d 682, 246 N.Y.S.2d 1006 (2d Dept.1964). Petitioner avers that leave to appeal to the Court of Appeals was thereafter denied by Judge Burke. There has been no application to the state court for a writ of error coram nobis.

The principal claim here made is contained in Point III of the brief for Eidenmuller in the Appellate Division; the briefs on appeal are submitted with the petition and Point III of Eidenmuller's brief is incorporated by reference. Point III argues that the arrest of Eidenmuller was illegal because in violation of New York Code of Criminal Procedure § 180 (informing of cause of arrest and officer's authority) and hence that currency taken from petitioner's person was unconstitutionally admitted in evidence (without objection) at the trial. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The trial minutes which have been examined by the Court, indicate that the trial began on October 3, 1961. The minutes do not indicate the calendar date on which the currency was admitted in evidence (SM 99–100) but it was after October 3, 1961 and thus some months after the decision in Mapp v. Ohio (June 19, 1961).

There is enough in the petition from which to conclude that petitioner also claims that—aside from N.Y.Code Cr. Proc. § 180—the officers did not have probable cause to arrest him, or "reasonable cause" as used in N.Y.Code Cr.Proc. § 177. I assume that petitioner bases on this contention a further claim that the search and seizure of the currency was in violation of his constitutional rights.

■ Petitioner asks for an evidentiary hearing and cites Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). However, there is no issue of fact tendered. As already stated, only the briefs in the Appellate Division are submitted by petitioner. His affidavit contains no statement of any fact. His brief in the Appellate Division contains a recital of facts taken from (and citing) the People's case in the trial minutes. Petitioner did not testify at his trial and put in no defense. As already noted, this Court has examined the trial minutes.

Under these circumstances, there seems to be no reason for holding an evidentiary hearing and Townsend v. Sain does not appear to compel one. 372 U.S. at 313, 83 S.Ct. 745, see Note, Federal Habeas Corpus for State Prisoners: The Isolation Principle, 39 N.Y.U.L.Rev. 78, 104–05 (1964).

The facts concerning the arrest and search were adequately developed during the trial and, in relevant part, are as follows:

On May 4, 1961 at about 11 p. m., Henry Bengel entered the Seneca Bar and Grill, located on Seneca Avenue in the Borough of Queens, where he stayed about 20 minutes, had a few drinks and left for home (about five blocks away). Also present in the bar when Bengel was there were Eidenmuller (petitioner), Speilman (his co-defendant at the trial) and another unknown man (SM 79; "SM" references are to the stenographic minutes). Three blocks from the bar in the vicinity of Harman Street and Seneca Avenue, Bengel was attacked by two men and robbed of his wallet which contained approximately sixty dollars (SM 12–17).

From a third floor window at 483 Seneca Avenue, overlooking the scene of the attack, Otto Freier, after being aroused from bed by noise in the street, observed a man stretched out on the sidewalk and two men standing next to him. He saw one of the two men take the victim's wallet. Although he could not clearly see the faces of the assailants (SM 74), Freier noticed that one of them was wearing a sweater (or jacket) with a red stripe (SM 74) and that the other was wearing a dark jacket and dark trousers (SM 64). The two men ran from the scene, across Seneca Avenue toward Greene Avenue. Freier then called the police. (By this time, Bengel had left the scene, gone to his home at 1880 Harman Street, Queens, and also called the police.) Patrolman McLaughlin was in a radio patrol car cruising in the neighborhood. When the alarm (presumably a result of Freier's call) was broadcast over the radio at 11:40 p. m. McLaughlin proceeded to the scene where Freier informed him of what he had just seen (SM 59–64). McLaughlin then cruised about the area (SM 94). Within a few minutes, Eidenmuller and Speilman, who had left the bar a short time after Bengel had left (SM 80) were stopped by McLaughlin while they were walking on the street at St. Nicholas and Gates Avenues (about eight or ten blocks from the scene of the attack); Speilman was wearing a sweater with a red stripe and Eidenmuller was wearing a bluish gray jacket and black trousers (SM 95). After some conversation with the two men, McLaughlin searched them and found $126 on Speilman and $61 on Eidenmuller. (The currency was introduced into evidence at the trial (SM 92–100).) Patrolman McLaughlin testified that if someone were to cross Seneca Avenue toward Greene Avenue and toward Wyckoff Avenue, then he would be going in the direction of St. Nicholas and Gates Avenues (SM 103), where McLaughlin stopped petitioner and his companion. Examination of a map shows that this testimony is correct. Freier testified that the two men he saw "crossed Seneca Avenue at an angle and went down Greene Avenue" (SM 63–64).

The officer took Eidenmuller and Speilman to the scene of the attack where Freier confirmed that Speilman's sweater was similar to the one he had previously seen on one of the assailants. Later, in the police station, Bengel (who had been brought to the police station by another patrol car) selected the two men from a "line-up". This identification was within an hour after the attack (SM 19; 72–73).

## I.

There was no objection based on Mapp v. Ohio, above, at the time the currency was introduced into evidence (SM 99–100); the claim that the arrest and the incidental search were unlawful was raised for the first time on appeal. (Brief for appellant, Point III). Since there was no opinion in the Appellate Division (20 A.D.2d 682, 246 N.Y.S.2d 1006 (2d Dept.1964)) it cannot be known whether the court considered the constitutional claim on its merits or instead

decided that the failure to object waived that question of law on appeal. See People v. Friola, 11 N.Y.2d 157, 227 N.Y.S. 2d 423, 182 N.E.2d 100 (1962); People v. Alexander, 18 A.D.2d 1092, 239 N.Y.S. 2d 364 (2d Dept.1963); cf. People v. Kelly, 12 N.Y.2d 248, 250, 238 N.Y.S.2d 934, 935, 189 N.E.2d 477 (1963).

If the Appellate Division considered the constitutional claim on its merits, leave to appeal to the New York Court of Appeals having been denied, the highest state court which would hear the claim has done so and the requirement of 28 U.S.C. § 2254 has been met. See, for example, Irvin v. Dowd, 359 U.S. 394, 406, 79 S.Ct. 825, 3 L.Ed.2d 900 (1959).

■ If, on the other hand, the claim was not considered on its merits, then it must be determined whether there exists an available collateral remedy in New York. A writ of error coram nobis to review this claim is not available in New York because the claim could have been made by objection in the trial court and reviewed on direct appeal. People v. Howard, 12 N.Y.2d 65, 236 N.Y.S.2d 39, 187 N.E.2d 113 (1962), cert. denied 374 U.S. 840, 83 S.Ct. 1893, 10 L.Ed.2d 1060 (1963).

> "It would introduce confusion in the administration of justice if defenses or objections which might have been made and reviewed on appeal could be reserved as grounds for collateral attack upon the judgment of conviction years after it was rendered." 12 N.Y.2d at 68, 236 N.Y.S.2d at 43, 187 N.E.2d at 116.

Thus it must be concluded that state court remedies have been exhausted.

■ Did the failure to object constitute a deliberate bypassing of orderly state procedure within the meaning of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) so that it can be said that petitioner has waived his rights? It would not seem so, since the failure to object appears to be the result of a routine decision by trial counsel during trial; the record does not show that the failure to object was "the con-sidered choice of the petitioner", as Fay v. Noia requires for any waiver (372 U.S. at 439, 83 S.Ct. at 849). "A choice made by counsel not participated in by petitioner does not automatically bar relief." (the same)

Fay v. Noia places denial of relief on the ground of waiver within "a limited discretion in the federal judge" (372 U.S. at 438, 83 S.Ct. at 848). I would not here exercise that "limited discretion" to find waiver and on that ground to deny relief. See United States ex rel. Alexander v. Fay, 237 F.Supp. 142, 147–148 (S.D.N.Y.1965).

Therefore the petition is properly to be considered on its merits.

## II.

The State apparently does not dispute the fact that the arrest took place when Patrolman McLaughlin stopped Eidenmuller and Speilman on the street. The Court feels justified in so finding because under New York law "[a]n arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer." N.Y.Code of Crim.P. § 171. Cf. N.Y.Code of Crim.P. § 180–a.

■ It is also apparent that at the time of the arrest, the police officer had neither an arrest warrant nor a search warrant. Thus the legality of the arrest under New York law is governed by §§ 177–182 of the New York Code of Criminal Procedure (principally §§ 177(3) and 180).

> "A peace officer may, without a warrant, arrest a person * * * [w]hen a felony has in fact been committed, and he has reasonable cause for believing the person to be arrested to have committed it." N.Y.Code of Crim.P. § 177(3).

There is no doubt that "reasonable cause" has the same meaning as "probable cause". See, for example, United States v. Di Re, 332 U.S. 581, especially 594–595, 68 S.Ct. 222, 92 L.Ed. 210, (1948).

A robbery of Bengel, clearly a felony, had in fact been committed.

I conclude that Patrolman McLaughlin had reasonable cause to believe that Eidenmuller and Speilman had committed the felony.

There was no reason for Patrolman McLaughlin to disbelieve Freier who claimed he had seen the incident and described it. Freier told the officer that one of the men was wearing a distinctive outergarment—a sweater or jacket with a red stripe. Freier also indicated the general direction in which he saw the two men running. When Patrolman McLaughlin soon thereafter saw two men walking along a nearby street, in an area toward which the officer had been told by Freier that the two men were heading and saw that one of the two men was wearing a distinctive sweater or jacket with a red stripe, there can be no doubt that "he had reasonable cause for believing" the two men had committed the felony.

Probable cause means something more than mere suspicion and something "less than evidence which would justify condemnation"; probable cause deals with the "practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949); see also Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

The conclusion is that the requirements of Section 177 were met.

Turning to Section 180 of the New York Code of Criminal Procedure, we find that section to read as follows:

"When arresting a person without a warrant the officer must inform him of the authority of the officer and the cause of the arrest, except when the person arrested is in the actual commission of a crime, or is pursued immediately after an escape."

From a review of the trial minutes, it seems clear that at the time of the arrest Patrolman McLaughlin did not inform Eidenmuller (or Speilman) of the cause of arrest. The evidence on this point is set out in an appendix. The question is whether the failure of the police officer to follow the provisions of Section 180 makes the arrest unlawful for search and seizure purposes.

New York law is first to be considered.

It has never been held that the effect of a violation of Section 180 is to make the arrest itself unlawful, as a matter of New York law.

The question is mentioned in People v. Coffey, 12 N.Y.2d 443, 453, 240 N.Y.S.2d 721, 727–728, 191 N.E.2d 263 (1963), remittitur amended, 13 N.Y.2d 726, 241 N.Y.S.2d 856, 191 N.E.2d 910 (1963), cert. denied, 376 U.S. 916, 84 S.Ct. 671, 11 L.Ed.2d 612 (1964) and in Squadrito v. Griebsch, 1 N.Y.2d 471, 154 N.Y.S.2d 37, 136 N.E.2d 504 (1956). See also United States ex rel. Lupo v. Fay, 332 F.2d 1020, 1022–1023 (2d Cir. 1964); United States v. Robinson, 325 F.2d 391, 395 (2d Cir. 1963). Cf. United States v. Di Re, 332 U.S. 581, 588, 68 S.Ct. 222, 92 L.Ed. 210 (1948).

In Coffey, above, the police stopped a car in which Coffey and another man were seated and (without a warrant) arrested the two men. One of the officers searched the persons of the men and found an envelope containing diamonds. The officer did not inform the arrested men of the cause of their arrest. The Court held that the surrounding circumstances "including the presence of the diamonds suggest that Coffey must have known why the car was stopped and why he and [his companion] were taken into custody." 12 N.Y.2d at 453, 240 N.Y.S. 2d at 727, 191 N.E.2d at 267. The New York Court of Appeals went on to say:

"There is some doubt as to whether failure to obey the command of section 180 voids an arrest * * * to the extent of making seized evidence inadmissible. We need not now announce that failure of an arresting officer to inform as to cause will never make an arrest illegal * *. It is enough in this case to hold that on the whole picture Coffey had for our present purposes sufficient notice

as to the cause for his capture and detention * * *." 12 N.Y.2d at 453, 240 N.Y.S.2d at 727–728, 191 N.E.2d at 267–268.

In United States v. Robinson, above, a narcotics case, the arresting officers did not inform the defendants of the cause of the arrest. One of the defendants knew one of the arresting officers to be an officer of the Narcotics Squad. This fact, in addition to the general conversation between the officers and the defendants (325 F.2d at 393) led our Court of Appeals, determining the validity of the arrest under New York law, to conclude (at 395) that there was substantial compliance with Section 180. Failure to "follow the ritual prescribed by § 180 of the New York Code of Criminal Procedure" would not, in and of itself, render the arrest invalid (and, necessarily, the fruits of the incidental search inadmissible).

■ While recognizing the factual distinction between a situation where the person arrested has on his person stolen diamonds or contraband narcotics and the situation in the case at bar, where the persons arrested had on their persons United States currency (which could be normally and innocently carried), I conclude that the New York Court of Appeals would hold that the failure of a police officer to obey the commands of Section 180 would not invalidate an arrest where the requirements of Section 177—probable cause—have been met.

But even if New York would hold such an arrest invalid, the violation of Section 180 committed during an arrest otherwise justified by probable cause would seem to be a mere irregularity in effecting the arrest and not of sufficient significance to render the incidental search unconstitutional. Because state court remedies had not been exhausted, this issue was mentioned but not decided in United States ex rel. Lupo v. Fay, above.

The Fourth Amendment to the United States Constitution contains the following mandate:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon *probable cause*, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (emphasis added).

■ One exception to the requirement of a warrant is a reasonable search made incident to a lawful arrest. "Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime." Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964); Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925); Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

■ For purposes of determining the constitutionality of a search incident to an arrest, the validity of the arrest effected by state officers for state offenses is determined by reference to state law. Ker v. State of California, 374 U.S. 23, 37, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Cf. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948) (federal prosecutions). But the ultimate question to be decided is whether petitioner's *federal* constitutional rights have been violated.

"States are not * * * precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who 'has standing to complain." Ker v. State of Califor-

nia, above, 374 U.S. at 34, 83 S.Ct. at 1630.

This Court must determine whether the "fundamental—i. e., constitutional—criteria established by this [Supreme] Court have been respected." (the same)

Since the basic and fundamental requirement of the Fourth Amendment is "probable cause", it follows that the basic and fundamental requirement of a search incidental to an arrest is that, at the minimum, the arrest and search be preceded by the existence of probable cause to do so. If a state statute authorized an arrest on grounds not amounting to probable cause, there can be no doubt that a search incident to an arrest on such grounds would violate the federal constitution regardless of the fact that the arrest may have been legal under state law. On the other hand, if a state statute contains requirements for an arrest beyond those required by the constitution, an arrest may violate such state statute but still be valid (for purposes of testing an incidental search) under the United States Constitution. See State v. Smith, 37 N.J. 481, 181 A.2d 761, 767 (1962). Such is the case here; it has never been held that Section 180 contains a fundamental, constitutional mandate. Indeed, our Court of Appeals referred to the requirement of Section 180 as a "ritual". United States v. Robinson, above, 325 F.2d at 395. In Ker v. California, above, 374 U.S. at 46, 83 S.Ct. 1623 and following, the concurring opinion suggests that unannounced police intrusion into a person's home violates the Constitution; see also Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). The case at bar does not raise that problem, as specifically noted in United States ex rel. Lupo v. Fay, above, 332 F.2d at 1023 n. 2.

Accordingly, this petition is denied because no violation of petitioner's constitutional rights has been shown.

If an appeal is desired, a certificate of probable cause will be issued. 28 U.S.C. § 2253.

So ordered.

APPENDIX

The testimony of Patrolman McLaughlin relevant as to compliance with Section 180 or not is as follows (SM 95–96; 101–102).

"Q. Now, when you stopped them, did you have a conversation with these defendants? A. Yes, sir.

"Q. What did you say to defendant Speilman and what did he say to you? A. Speilman first. I asked him where they were coming from and they said from a tavern * * · *

"Q. Did you have any other conversation? A. We asked them if they were in the vicinity of Harmon Street and Seneca Avenue, or Green Avenue and Seneca, and they said, no.

"Q. Did you have a conversation with the other person named Eidenmuller? A. Yes, sir.

"Q. What did he say to you and what did you say to him? A. We asked him the same questions and got the same answers * * *

"Q. Did you search the defendants at St. Nicholas and Gates Avenue? A. Yes sir * * *

"Q. Now, officer, after you apprehended these defendants, and at the intersection, or near St. Nicholas and Gates Avenues, what did you do then? A. I took the defendants back to 483 Seneca Avenue.

"Q. Then where did you take them? A. To the station house.

"Q. Did you have any further conversations with defendants Eidenmuller or Speilman? A. The normal conversations you have with prisoners * * * I asked them where they were from, where they lived * * *

"Q. What was the total extent of your conversation? A. I asked them what they were doing at the Seneca Avenue Bar and Grill.

"Q. What did they say? A. They replied they were there to look at a car that was for sale. I asked them where they were going at the time we stopped them. They said, they were going to have a pizza pie and then to Speilman's house for coffee. That was about the extent of the conversation that I had with the defendant. I asked them if they were married. Just the normal questions * * *."

This Court also assumed to be true the following allegation of petitioner ("Traverse" p. 6):

"The relator inquired the officer's purpose and authority and this querry (sic) was answered by 'you'll find out'."