THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT W. JONES, Also Known as ROBIN A. MORRISON, Appellant.

Third Department, July 29, 1976

*John C. Barney* for appellant.

*Joseph C. Joch, District Attorney,* for respondent.

SWEENEY, J. In a two-count indictment defendant was charged with criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree. Subsequent to indictment, suppression proceedings followed, and, after a hearing, the trial court denied suppression of the weapon taken from defendant at the time of his arrest. Thereafter, defendant entered a plea of guilty to a reduced charge of attempted criminal possession of a weapon in the third degree. He was sentenced to an indeterminate term of up to four years. This appeal ensued.

The paramount issue on this appeal is the validity of a search and seizure of defendant by two police officers. Such search produced the weapon, the attempted criminal possession of which defendant was convicted. A resolution of this issue requires a complete recitation of the facts and circumstances surrounding the incident. While the facts and circumstances are not free from conflict, an examination of the record justifies the following conclusions by the Trial Judge.

Defendant was arrested on the early morning of November 1, 1974 on Main Street in the Village of Groton, Tompkins County, in company with one Tullier and charged with possession of a loaded firearm. Prior thereto, and on October 21, 1974, Officer Lawrence, one of the arresting officers, received a phone call from one Douglas who stated that Robin Morrison (the defendant) had in his possession a handgun and that in the process of showing it off he had discharged it, the bullet hitting the shoe of one Reeves. Douglas described Robin as an individual whom Officer Lawrence had previously seen on the street talking to Douglas. Douglas further informed the officer that Robin had explained that the gun came from a "rip off" of a residence in the village. The officer knew that prior to October 21, 1974 there had been a robbery in the village in which several guns had been stolen. After the conversation with Douglas, the officer verified Douglas' story with Reeves who had previously given information to the officer which had resulted in an arrest. Both Douglas and Reeves told Officer Lawrence that they believed defendant had left town and had gone south to sell the guns. Lawrence attempted to locate the defendant, but without success.

On October 31, 1974, Lawrence received an anonymous phone call from a person who reported that Robin was back in town and planned to rob a store when the night deposits were

being transferred to the bank, and Robin, who was armed, would shoot any officer that tried to stop him. Officer Lawrence assumed the anonymous caller was one Snyder, a half brother of Officer Ostrander. The night deposit was made, however, without incident between 9:30 and 10:00 P.M. Shortly after midnight Officers Lawrence and Ostrander were seated in a parked patrol car and observed defendant and one Tullier walking down Main Street. After defendant and his companion walked by the police car the officers ordered them to "halt and keep their hands clear" so that they could be seen. Defendant proceeded to get behind his companion and for a moment was out of the officers' view. Both officers then drew their revolvers and told defendant and Tullier to freeze. Thereafter, Officer Ostrander went to defendant and grabbed his hand with the gun in it. The arrest in question was thereupon made.

Basically, it is defendant's contention that he and his companion were merely walking along the street, doing nothing illegal, when seized and searched by the officers before discovery of the weapon and without reasonable cause to believe defendant had a weapon. Defendant urges that both the seizure and the search were illegal and the weapon should have been suppressed. This contention is based, in our view, on an incomplete consideration of all the pertinent facts and circumstances surrounding the incident in question. An analysis of the record in its entirety induces a contrary conclusion. In resolving the issues we must weigh the ever present conflict resulting from an encounter of a citizen with a police officer. The citizen has the constitutional right to freely walk the streets at any hour of the day or night without being seized or arrested at the whim or caprice of a police officer. *(People v Cantor,* 36 NY2d 106). On the other hand, a person may be forcibly stopped and detained on the street if the police officer has a reasonable suspicion that the individual is committing, has committed or is about to commit a crime (CPL 140.50, subd 1; *Terry v Ohio,* 392 US 1; *People v Cantor, supra).*

In evaluating the legality of the police action, in view of this conflict, we must consider all of the attendant circumstances and all of the reliable information possessed by the officer at the time of the encounter with the defendant. In the instant case the encounter in question occurred in the early hours of the morning. Officer Lawrence knew that defendant was the person for whom he was looking and was the same person

who had discharged a weapon in an apartment a few weeks earlier. The officer also had reasonable grounds to believe that defendant had recently stolen weapons from a residence in the village. Furthermore, he had reasonably reliable information that defendant intended to rob a store when the night deposits were being transferred to the bank and would shoot any policeman who tried to stop him. The fact that the deposit was made without incident does not lessen the initial reliability of the information given to the officer. Under such circumstances, reliable information does not become unreliable merely because the crime did not take place. There could be many reasons why defendant did not appear at the bank at the appropriate time, including a change of mind or an unexpected delay in arriving there. The reliability of the information depended upon the facts and circumstances at the time the officer received it and not upon some later circumstance unknown to the officer. Here, it is most significant that in referring to the anonymous phone call the officer testified, "I assumed it was Parky Snyder * * * I felt I was talking to Parky Snyder. I knew him fairly well." This was not then a truly anonymous phone call with no elucidation whatsoever as to the caller as it was in the recent case of *People v La Pene* (40 NY2d 210). Officer Lawrence also testified that Snyder was a half brother of Officer Ostrander.

We conclude that in light of all these facts and circumstances the officer possessed that degree of belief at the point of inception which justified his action in stopping defendant for he had a reasonable basis to believe defendant was the individual for whom he was looking, the one who had committed a crime and that he would likely be armed *(People v Moore,* 32 NY2d 67; *People v Coffey,* 12 NY2d 443). This being so, he had the further right to seize the weapon. A police officer has the authority to frisk if he reasonably suspects he is in danger of physical injury by virtue of the detainee being armed (CPL 140.50, subd 3). The actions of the defendant at the time would justify a reasonable conclusion that he was trying to dispose of the weapon or attempting to use it as a means of escape, endangering the officers' lives. Officer Ostrander, therefore, properly grabbed defendant who had the gun in his hand *(People v Taggart,* 20 NY2d 335). The facts in the instant case are clearly distinguishable from those of the *Cantor* case relied upon by defendant and from those of the recently decided *La Pene* case.

We have examined the other issues raised by defendant and find them unavailing and unnecessary of further comment by us.

The judgment should be affirmed.

GREENBLOTT, J. P., MAIN, LARKIN and REYNOLDS, JJ., concur.

Judgment affirmed.