OPINION OF THE COURT
Louis C. Benza, J.
Claimant, Christopher Myers, a 28-year-old male, lived with Cindy Manon, an 18-year-old female, and her three children in a rented one-room cabin in Phoenicia, New York. On August 13,1992, Kenneth Manon, Cindy’s youngest child, a two-month-old boy, was found dead in his bassinet. An autopsy performed on Kenneth on August 14, 1992 made a finding of severe malnutrition, severe dehydration, healing injuries of the left humerus and of the 4th and 5th left ribs, and pulmonary edema (exhibit B). Kenneth weighed 6 pounds 141/2 ounces at birth, June 9, 1992 (see, exhibit 5). By July 28, 1992 his weight had increased to 9 pounds 1 ounce (see, exhibit 5; exhibit B, supporting deposition of physician’s assistant Alice Lewis), and on the date of his death, he weighed 6 pounds 8 ounces (see, exhibit B, autopsy report.)[1] The autopsy revealed "[n]o disease process which would correlate with the dehydration and undernutrition * * * The cause of Kenneth’s dehydration and undernutrition appears to have been inadequate intake of fluids and food.” In other words, the child starved to death. The photographs taken of the child by the investigating police officers clearly depict a child who appears to have been grossly *92 undernourished. When the child was found dead by his mother, the police were called by claimant. The police, as part of their investigation, interviewed Cindy, claimant, several neighbors, several medical providers, the deceased child’s father, Howard Manon, and his live-in girlfriend, Darleen Knapp. An autopsy was ordered by the Ulster County Medical Examiner and was performed by Jeffrey D. Hubbard, M.D. (see, exhibit B, State Police Report 10). On August 20, 1992, after evaluating the results of the investigation and after consultation with the Ulster County District Attorney, State Police Senior Investigator Edward A. Kovac and Investigator Wayne Olson asked claimant to come to the police barracks for additional questioning. The claimant, pleading the Fifth Amendment, refused to answer any questions. Claimant was then placed under arrest for criminally negligent homicide. Claimant was arraigned and committed to the Ulster County Jail in lieu of $5,000 bail. Subsequently, on September 29, 1992, both claimant and Cindy were indicted by the Ulster County Grand Jury for the offense of manslaughter in the second degree (Penal Law § 125.15 [1]) and endangering the welfare of a child (Penal Law § 260.10 [1]). On May 28, 1993 the Ulster County Court Judge dismissed all charges against claimant, basically on the grounds that the evidence before the Grand Jury was insufficient "as a matter of law to establish a[n in] loco parentis relationship between the defendant and the infant victim so as to impose upon the defendant criminal liability for the infant’s death” (exhibit 4, at 3). This decision was affirmed on appeal (People v Myers, 201 AD2d 855). As a result, this claim for false arrest ensued. The claim is based on allegations that the State Police did not have probable cause to arrest claimant for criminally negligent homicide because, at the time of the arrest, the arresting officers knew that claimant was not the father of the deceased child and, based on their knowledge that the child’s father was still alive and exercised his visitation rights, the officers could not have assumed that claimant was acting in loco parentis to the exclusion of the parents, who were responsible for the care of the deceased child.
At trial, on cross-examination, claimant testified that after being told that Kenneth died because he was underfed, he refused to answer any of the investigating officers’ questions for fear of incriminating himself. Claimant testified, "I pleaded the Fifth Amendment to protect myself.” A police officer may arrest a person for a crime "when he has reasonable cause to believe that such person has committed such crime, whether in his presence or otherwise” (CPL 140.10 [1] [b]).
*93 " 'Where an officer, in good faith, believes that a person is guilty of a felony, and his belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise, he has such probable cause for his belief as will justify him in arresting without a warrant.’ ” (People v Coffey, 12 NY2d 443, 451.)
It should also be noted that "evidence of a subsequent arraignment or indictment [constitutes] some proof of the presence of probable cause” (Broughton v State of New York, 37 NY2d 451, 458, cert denied sub nom. Schanbarger v Kellogg, 423 US 929). As hereinabove stated, claimant was indicted by the Ulster County Grand Jury on September 29, 1992 on two felonies: violation of Penal Law § 125.15 (1), manslaughter in the second degree, and violation of Penal Law § 260.10 (1), endangering the welfare of a child, and, as a result of that indictment, claimant was again arrested on September 30, 1992, arraigned on that same date, and released on bail. It was the charges constituting that indictment that were dismissed by County Court on motion by claimant after inspection of the Grand Jury minutes on the grounds that the evidence before the Grand Jury was insufficient "as a matter of law to establish a[n in] loco parentis relationship between the defendant and the infant victim” (exhibit 4, at 3). The Appellate Division, Third Department, affirmed, stating as follows: "We affirm. The People seek to prove that defendant failed to provide adequate food, care and medical assistance for the child. Criminal liability cannot be premised on a failure to act, however, unless the party so charged has a legal duty to act (see, People v Spadaccini, 124 AD2d 859, 861). A person who has no familial relationship to a child ordinarily has no legal duty to provide for it, unless it can be shown that he or she has assumed all of the responsibilities incident to parenthood. That a party has taken some part in meeting the child’s daily needs is not enough; a 'full and complete * * * interest in the well-being and general welfare’ of the child is necessary, as is the intent to fully assume a parental role, with the concommitant [szc] obligations to support, educate, and care for the child on an ongoing basis [citation omitted]” (People v Myers, 201 AD2d, supra, at 856).
After reviewing the facts, the Appellate Division further stated: "County Court rightly found that the evidence presented to the Grand Jury fell far short of the showing necessary to support a conclusion that defendant stood in loco parentis to Kenneth” (People v Myers, supra, at 856).
*94 The question presented here is whether the arresting officers had probable cause to arrest the claimant for criminally negligent homicide, not for the charges for which claimant was subsequently indicted and which were eventually dismissed. The probable cause issue must be examined based on the facts known to the arresting officers, facts which relate to the crime for which claimant was arrested, i.e., criminally negligent homicide. The test espoused in People v Coffey (12 NY2d 443, supra), and more recently followed in Minott v City of New York (203 AD2d 265), uses the reasonable-person standard and does not superimpose—and rightfully so—standards used by Judges in determining whether sufficient evidence was presented to a Grand Jury to sustain an indictment. Let us test the information possessed by the arresting officers before claimant’s arrest against the reasonable-person standard to see if probable cause did exist.
When the arresting officers arrived at the scene they found a two-month-old child dead in his bassinet. An examination of the child’s surroundings revealed a filthy, smelly cabin strewn with rotten food, cat feces, dirty clothes, garbage, unwashed pots and pans and dishes. The body was found in a soiled bassinet located next to the bed used by his mother and claimant. The mother was 18 years old and had two other children, who were also found to be unclean and in dirty clothes, and who, on August 13, 1992, were removed from the home, as endangered children, by the Ulster County Child Protective Agency. A visual examination of the dead child clearly revealed, without the necessity of a medical opinion, an emaciated, undernourished physical appearance. Further investigation revealed that at the time of his death, Kenneth weighed 6[1]/2 ounces less than when he was born, and that he lost 2 pounds 9 ounces in 16 days (between July 28 and Aug. 13), which represents a loss of over 28% of his body weight.
The police officers knew that claimant, who was 10 years older than his live-in girlfriend, the mother of the deceased child, had been living with her at the rented cabin since before Kenneth’s birth. The officers were also aware that claimant was not the child’s father but had contributed $105 per month to the household and had fed and cared for the children since moving in with their mother. Certainly, the officers had obtained enough information to deduce that although claimant had not taken on an official imprimatur of fatherhood, his past activities, which were closely connected to the deceased child’s welfare, constituted a reasonable basis for them to conclude *95 that claimant had accepted responsibility for the child’s general welfare. In fact, Investigator Kovac testified that as a result of his investigation, he believed that claimant was acting as the child’s guardian. Although these activities did not equate to a legal finding of acting in loco parentis—the necessary ingredient required for conviction for child abuse based on acts of omission—it does relate to the arresting officers’ belief or state of mind in evaluating probable cause. It is also well to note that although this claim was filed on August 11, 1993, claimant, on March 9, 1994, admitted in Family Court, Ulster County, that he was a person legally responsible for all three of the Manon children and, in that same proceeding, he consented to the entry of a finding of neglect in the case of Kenneth Manon. Although these admissions were made after his arrest and acquittal, at this stage of this proceeding, they do constitute some evidence of justification for the arresting officers’ belief at the time of the arrest that claimant’s relationship to Kenneth amounted to an acceptance of responsibility for the child’s welfare. At this junction of claimant’s quest for justice it appears that had the truth of claimant’s relationship to Kenneth, as admitted to in the Family Court proceedings, been known at the time of the criminal proceedings, claimant would be elsewhere and definitely not prosecuting this claim. Suffice it to say that if an arraignment or indictment which occurs subsequent to an arrest without a warrant constitutes some proof of the presence of probable cause in deciding the issue of justification for the arrest without a warrant (Broughton v State of New York, 37 NY2d, supra, at 458), more persuasive evidence of the presence of probable cause emanates from subsequent in-court admissions made by the offending party to essential elements of the charges upon which the initial arrest was made.
Unquestionably, to a reasonable person, allowing a two-month-old child to die of starvation and standing by and doing nothing sounds in criminal negligence (Penal Law § 125.10). In his testimony, Investigator Kovac stated that in addition to having considered Dr. Hubbard’s autopsy findings, based on his own investigation and discussions of these findings with the District Attorney before the arrest, he believed he had reasonable cause to arrest claimant even though claimant was not the child’s father. In determining probable cause, it should also be noted that criminally negligent homicide does not require that the perpetrator be consciously aware of the risk of his actions, an element necessary for a finding of manslaugh *96 ter (People v Haney, 30 NY2d 328, 333), a factor which lessens the burden of the herein defendant on probable cause as the claimant was arrested for the crime of criminally negligent homicide. Claimant’s cause of action is based on that arrest, not on the subsequent arrest stemming from the manslaughter and endangering charges, which are not subject to false imprisonment claims as such arrest was made under " 'a valid process issued by a court having jurisdiction’ ” (Broughton v State of New York, supra, at 457).
Based on their investigation and review of these findings with the District Attorney, the arresting officers could not be said to have acted without reasonable cause simply because the legal requirement of a finding of in loco parentis was required to support a conviction for the crime charged. In analyzing the facts on this issue, we must remember, based on the autopsy report, that the arresting officers had information indicating that the deceased child had also been physically injured. The report stated that "[r]eactive new bone of left humerus and 4th and 5th left ribs signifies response to previous bony injury” (see, exhibit B). No explanation of these injuries was provided either by the mother or by claimant. Certainly, reasonable cause is heightened by these facts especially when claimant refused to answer questions in order to protect himself. If these injuries were caused by claimant, it follows that in loco parentis would not be a necessary element in establishing the crime of child abuse (see, People v Stanley, 135 AD2d 910, 911; Penal Law § 260.10 [1]). There is no question but that claimant held himself out as the deceased child’s mother’s "significant other”, which could also lead a reasonable person to believe that such commitment also caused to exist some duty to the mother’s children who shared with claimant a common household, at least for being aware of the starving child’s plight and take some action to avoid the inevitable consequences from nonaction. In analyzing reasonable cause, can we not, as reasonable people, say that nonaction, under the present circumstances, arises to a finding of behavior which would likely be injurious "to the physical * * * welfare of a child” (Penal Law § 260.10 [1]). In loco parentis need not be established for a conviction based on violation of said provision (see, People v Stanley, 135 AD2d, supra, at 911).
It is the finding of this court that the arresting officers acted in good faith when they arrested claimant, believing he had committed a felony, and that the evidence in the case established that probable cause existed for the officers to *97 believe that claimant was guilty of the felony; that their belief rested on such grounds " ' "as would induce an ordinarily prudent and cautious [person], under the circumstances, to believe likewise, [thereby providing the arresting officers with] such probable cause for [their] belief as [would] justify [them] in arresting without a warrant.” ’ ” (Minott v City of New York, 203 AD2d, supra, at 267, citing People v Coffey, 12 NY2d 443, 451, supra.) The State having carried its burden of proof on the issue of probable cause as justification of claimant’s arrest, its motion to dismiss, made at the conclusion of trial and upon which the court reserved decision, is now granted and the claim is dismissed.

. The autopsy report (at unnumbered page 2) lists Kenneth’s weight at the time of his death as 2,980 grams, which equates to 6 pounds 8 ounces.