**Frederick LITTLE, Plaintiff,**

v.

**P.O. MASSARI, et al., Defendants.**

**No. CV–05–2873 (BMC)(LB).**

United States District Court, E.D. New York.

Dec. 12, 2007.

Frederick Little, Tafton, PA, pro se.

Sabrina M. Tann, New York City Law Department, Caryn A. Rosencrantz, Corporation Counsel, City of New York, New York, NY, for Defendants.

### MEMORANDUM DECISION AND ORDER

COGAN, District Judge.

This action for false arrest based on 42 U.S.C. § 1983 is before me on the parties' cross-motions for summary judgment. Defendants' motion is granted; plaintiff's motion is denied.

### BACKGROUND

The case arises out of a domestic dispute between plaintiff and the mother of his daughter, Sandye Renz, over visitation rights. On February 2, 2004, Renz complained to defendant Detective John Callaghan that plaintiff was harassing her by making numerous telephone calls to her residence in which he cursed and yelled at her. On February 7, 2004, Callaghan arrested plaintiff based on the complaints. As a result of the arrest, the Kings County Criminal Court issued three sequential Orders of Protection that remained in effect between February 7, 2004 (the date of plaintiff's first arrest) and February 7, 2005. Plaintiff was convicted on July 13, 2004 of Attempted Aggravated Harassment arising out of this arrest.

The Orders of Protection were on a form apparently used by the Kings County Criminal Court. The form contains seven decretal paragraphs with a box that the issuing judge can check, specifying conditions which the defendant must observe, and leaving space for the judge to handwrite in specifics as to each box that the judge checks. In each of the Orders entered against plaintiff, he was directed to stay away from Renz and every place in which she was regularly present (e.g., home or workplace); to refrain from communicating with her in any way including "mail, telephone, email, voicemail, or other means[;]" and to refrain from "assault, stalking, harassment, menacing" or committing any other criminal offense against her. In addition, each form had a checked box entitled, "[s]pecify other conditions defendant must observe[,]" as to which the judge had added "[s]ubject to Family

Court Order & ACS [*i.e.,* Administration for Children's Services][.]"

After the issuance of the first Order of Protection, the Family Court issued two Orders that also had the effect of regulating contact between plaintiff and Renz. On March 16, 2004, the Family Court entered a visitation order allowing plaintiff to pick up his daughter from Renz' home on March 17, 2004, April 1, 2004, and every alternate weekend thereafter, or alternatively, if a weekend visit did not occur, on the following Monday. On May 27, 2004, the Family Court entered another Order authorizing plaintiff to telephone his daughter at Renz' home three times per week at approximately 6:00 p.m.

The subject of this action is plaintiff's three arrests for alleged violations of the Orders of Protection.

*Arrest of June 8, 2004*

On June 3, 2004, Renz came into the 78th Precinct of the New York City Police Department and spoke to defendant Detective Francine Massari. Renz complained that plaintiff had yelled and screamed at her in front of her home that week, and had left a message on her answering machine in violation of the Order of Protection. She showed Massari a copy of the Order of Protection and Massari confirmed its validity through a database search.

Massari telephoned plaintiff, who was in Pennsylvania, and advised him that Renz had complained that he violated the Order of Protection. She requested that he come in to be arrested. At this point, the facts become somewhat disputed. Massari's version is that plaintiff admitted to making numerous telephone calls to Renz and

leaving messages on Renz' answering machine, and agreed to come in to be arrested. Plaintiff's version is that he advised Massari of the Family Court Orders allowing him to telephone the house to speak to his daughter and that Renz was thwarting those Orders by turning on her answering machine when he was trying to call his daughter.

Plaintiff agrees, however, that Massari told him that it was "automatic" that he was going to be arrested for violating the Order of Protection and he agreed to return from Pennsylvania to the precinct house knowing that he would be arrested.[1] He came in on June 8, 2004, and Massari arrested him for criminal contempt. The charges were dismissed on motion of the District Attorney on December 3, 2004.

*Arrest of August 6, 2004*

On June 20, 2004, Renz again complained to the NYPD that plaintiff had violated the Order of protection by standing in front of her house. Massari was assigned to investigate on July 13, 2004. She again verified that there was an outstanding Order of Protection. Renz called Massari on July 16, 2004 and repeated her complaint of June 20, 2004. She advised Massari that plaintiff would be coming by for a visitation on August 6, 2004. Massari asked defendant Detective Howard Reed to meet plaintiff there on that date and arrest him. Detective Reed made the arrest and charged plaintiff with criminal contempt, stalking, and harassment. After speaking to Renz, the District Attorney declined to prosecute the case and plaintiff was released the next day.

1. Plaintiff's affidavit on the motions avers that "at no time" during his telephone call with Massari did he "consent to be arrested." If he is drawing a distinction between knowing that he was going to be arrested and consenting to it, the distinction is irrelevant. If he is denying that Massari informed him that he was going to be arrested when he came in, his affidavit contradicts his deposition testimony and is therefore disregarded. *See Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir.2001).

*Arrest of November 8, 2004*

Renz spoke to defendant Detective Padilla on November 8, 2004. Renz again asserted that plaintiff was standing across the street from her home in violation of the Order of Protection. Renz told Padilla that she had arranged with plaintiff to pick up his daughter for visitation at the 78th Precinct that same day. Padilla confirmed that an Order of Protection remained in effect. He arrested plaintiff at the precinct house, charging him with violating the Order of Protection, stalking, and harassment. Plaintiff went to trial on these charges and was acquitted on February 3, 2005.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must view all facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)).

A party may not defeat a motion for summary judgment solely through "unsupported assertions" or conjecture. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995). Rather, the nonmoving party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" of the facts submitted by the moving party. Fed.R.Civ.P. 56(e)(2); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment

when the moving party has set out a documentary case."). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor...." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514.

### II. False Arrest

■ A § 1983 claim for false arrest derives from the Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). In analyzing claims of false arrest, courts "generally look[ ] to the law of the state in which the arrest occurred." *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir.2007) (citations omitted). Under New York law, where an officer makes an arrest without a warrant, the presumption arises that the arrest was unlawful. *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir.2007). However, "this presumption is rebutted if, applying the reasonable, prudent person test, the arresting officer, acting in good faith, had 'reasonable cause for believing the person to be arrested to have committed' " a criminal act. *Id.* (citing *Dillard v. City of Syracuse*, 51 A.D.2d 432, 435, 381 N.Y.S.2d 913, 915 (4th Dep't 1976) (quoting *People v. Coffey*, 12 N.Y.2d 443, 451, 240 N.Y.S.2d 721, 726, 191 N.E.2d 263 (1963))). The "good faith" requirement examines whether, when the facts are construed in favor of the plaintiff, the officer's probable cause determination was objectively reasonable. *Id.* Put differently, the existence of probable cause is an absolute defense to a false arrest claim. *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir.2006).

■ An officer has probable cause to arrest when he or she has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient

to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* (citation omitted); *see also Dunaway v. New York*, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979). "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir.1995) (citing *Hebron v. Touhy*, 18 F.3d 421, 422–23 (7th Cir.1994); *Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F.Supp. 351, 355 (S.D.N.Y.1992) ("The veracity of citizen complainants who are the victims of the very crime they report to the police is assumed."), *aff'd*, 993 F.2d 1534 (2d Cir. 1993)). Even where the circumstances of an arrest may raise questions as to the motivation of the arresting officer, motivation is not a consideration in assessing probable cause. *Singer*, 63 F.3d at 119; *see also Lee v. Sandberg*, 136 F.3d 94, 103 n. 5 (2d Cir.1997) (plaintiff's suspicion that trooper arrested her to appease complaining witness who indicated intent to file complaint against trooper was irrelevant to probable cause determination) (citing *Mozzochi v. Borden*, 959 F.2d 1174, 1179–80 (2d Cir.1992)).

▇ Furthermore, probable cause is not negated simply because there may be an innocent explanation for the facts alleged, and "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." *Panetta v. Crowley*, 460 F.3d 388, 395–96 (2d Cir.2006) (citing *United States v. Fama*, 758 F.2d 834, 838 (2d Cir.1985)). In *Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir.2001) the Second Circuit held that:

Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest. Although a better procedure may [be] for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him. Nor does it matter that an investigation might have cast doubt upon the basis for the arrest. Before making an arrest, if the arresting officer has probable cause, he need not also believe with certainty that the arrestee will be successfully prosecuted.

*Id.* at 70 (internal quotation marks and citations omitted). "Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir.1989).

▇ The essence of plaintiff's claim as to each of his arrests is that the Orders of Protection had a specific exemption for what he did—namely, that they were "subject to" Family Court Orders—and that defendants therefore lacked probable cause to arrest him. However, the reference to "Family Court Orders" in the Orders of Protection did not dissipate the probable cause created by Renz' complaints and the prohibitive decretal paragraphs in the Orders of Protection.

The face of the Orders of Protection did not necessarily give defendants notice that plaintiff might be relieved of some of the specific prohibitions that it included. To the contrary, the form used provided for "[s]pecific conditions that defendant must observe," implying, with the inserted lan-

guage "subject to Family Court Orders," that there might be more prohibitions imposed on plaintiff by the Family Court—conditions that plaintiff "must observe"—not less. Nothing in that provision contradicted Renz' story that plaintiff was in violation of the Order.

Plaintiff's allegations that he advised Massari of the "carve-out" created by the Family Court Orders when he spoke to her on the telephone, which I assume to be true for purposes of defendants' motion, presents a somewhat closer question, but leads to the same conclusion. To determine who to arrest based on her telephone conversation with plaintiff, Massari would have had to insert herself directly in the middle of the dispute between plaintiff and Renz, acting as judge or jury to determine who was right. At the very least, she would have had to: (1) obtain copies of the Family Court Orders to which plaintiff referred; (2) take a statement from plaintiff covering precisely when he called Renz or stood in front of her house; (3) compare plaintiff's statement to the allowances in the Family Court Order and to Renz' statement; and (4) decide which side's version of the those events she was inclined to believe.

The law relating to probable cause does not require a police officer to undertake this level of investigation and analysis before making an arrest. Massari had a complainant before her who she found credible and who presented a valid Order of Protection. It is clear from the submissions that based on what she had heard from Renz and the Order of Protection, Massari had determined to arrest plaintiff regardless of what he said in the telephone call. She called plaintiff not to listen to his side of the story, but to get him to surrender. This she was entitled to do. There is nothing in Renz' statement or the Order of

Protection that would undermine the existence of probable cause.

This is particularly true considering that Renz' initial complaint was not limited to the accusation that plaintiff left messages on her answering machine. Renz also swore in her statement that "Rik [apparently a nickname for plaintiff] screaming at me in front of my home after coming to pick up my daughter for visitation." There was nothing in the Family Court Orders that let plaintiff do that, and the Orders of Protection specifically prohibited it.[2] To decide not to arrest plaintiff in the face that sworn statement would have required Massari to go beyond Renz' complaint, made under penalties of perjury, and weigh the credibility of both parties. Such an expansive view of the probable cause requirement would make it inordinately difficult for police officers to perform their responsibilities.

Plaintiff correctly points out that an officer's decision to arrest must be reasonable in light of the circumstances, and the officer must act in good faith. Plaintiff alleges that these defendants did not. He premises his argument for lack of good faith by asserting that Massari should have known that Renz, as a litigant in a custody battle, would make up stories; that Massari is a "personal friend" of Renz; and that, based principally on minor discrepancies in the documentation surrounding his arrests, defendants falsely created and backdated documents to justify their actions.

These allegations are insufficient to raise an issue of fact. There is no evidence at all that Renz had any relationship with Massari other than complainant/police officer; conclusory allegations "upon information and belief," as plaintiff advances

---

**2.** Plaintiff may be asserting that Massari never told him of this allegation in the telephone calls he had with her. There was no requirement that Massari do so.

here, cannot defeat summary judgment. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.1998) ("Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact."). The document discrepancies about which plaintiff complains—for example, one entry says that plaintiff lives with his sister in Connecticut when in fact he lives with her in Pennsylvania, and another lists his time of arrest as 6:15 p.m. when plaintiff claims the arresting officer "moved it up a few hours"—could not reasonably be considered to be evidence of the precinct-wide conspiracy in which plaintiff believes.

As to plaintiff's assertion that Renz' credibility was always to be doubted because of the custody battle, that works both ways. That is, even if Massari had embarked a weighing of the parties' credibility, plaintiff was also a litigant in a custody battle, and one who had Orders of Protection entered against him. By the time of his second and third arrests that are at issue in this case, plaintiff had already been convicted of Attempted Aggravated Harassment of Renz.

Police officers in this situation are in a delicate position that is reflected in the standard for probable cause. If an officer accepts the view of the complaining witness, he may find himself a defendant in an action like this. But it can be worse. If the officer determines to reject the complainant's view and the defendant who is the subject of the Order of Protection commits an act of violence against that complainant—and there are reported instances in which the failure to enforce led to horrific consequences, *see Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005); *Sorichetti by Sorichetti v. City of New York*, 65 N.Y.2d 461, 492 N.Y.S.2d 591, 482 N.E.2d 70 (1985)—the officer may find himself sued for not taking aggressive enough action in enforcing the Order. *Id.*[3]

Probable cause therefore does not admit to the automatic discounting of the account of a complainant for whose benefit an Order of Protection is issued. If it did, the standard would diminish whatever level of protection such Orders provide. This is simply because in every instance, the Order of Protection is addressed to a relationship *in extremis*. Rather, the officer has to view the complainant as any other witness, taking into account their position in the dispute but also acutely aware of the possible consequences of disregarding the complainant's entreaties.

Plaintiff has pointed to no objective facts that would cause Massari to doubt Renz' sworn statements. Neither plaintiff's (assumed to be true) advice that the Orders of Protection were qualified by the Family Court Orders nor his statements that Renz was deliberately thwarting the Family Court Orders by turning on her answering machine constituted "red flags" that should have stopped Massari from arresting plaintiff on June 8 or sending Reed to arrest him on August 6. The same is true of the arrest that Padilla effected on November 8. This was already a red flag situation because of the Order of Protection initially, and plaintiff's conviction thereafter. Probable cause to arrest existed on each occasion.

Moreover, at the very least, defendants here had "arguable" probable cause and are thus entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 2158–59, 150 L.Ed.2d 272 (2001). Probable cause exists given reason-

---

**3.** *Town of Castle Rock* eliminates or severely reduces this exposure under 42 U.S.C. § 1983, 545 U.S. at 766–68, 125 S.Ct. at 2809–10, but it continues to exist to the extent recognized by state law, and *Sorichetti* shows that New York law recognizes such a claim, 65 N.Y.2d at 468–69, 492 N.Y.S.2d at 596, 482 N.E.2d 70.

**378**

ably trustworthy information that would lead a person of reasonable caution to believe a crime has occurred. *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir.2000). An officer is entitled to qualified immunity if there is arguable probable cause, which exists if it was objectively reasonable for the officer to believe that there was probable cause, or if officers of reasonable competence could disagree as to the existence of probable cause. *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir.2004).

This case bears similarities to *Welch v. City of New York,* 166 F.3d 1203, 1998 WL 904319 (2d Cir.1998) (table). There, the defendant officer verified the validity of an Order of Protection. The plaintiff tried to tell the officer that the Order had expired, and tried to show him an additional paper, but the officer refused to look at it. The Second Circuit held that based on what the officer knew up to that point, he was protected by qualified immunity.

The same result obtains here. As the Supreme Court held in *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986), qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Plaintiff has failed to raise an issue of fact as to whether defendants fall within either category.

### CONCLUSION

Defendants' motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied. The Clerk is directed to enter judgment in favor of defendants.

**SO ORDERED.**