OPINION OF THE COURT
Marybeth S. Richroath, J.
On December 28, 2011, the Administration for Children’s Services (ACS) filed a petition against respondent M.A., alleging that she had beaten her son E.L. about the body with a “blue magic glow stick” on December 22, 2011, leaving him with red marks about his body, including his arms, torso and legs. The petition alleged that this was not the first time respondent had beaten the child; based upon information from E.L.’s sister, and indeed, from respondent herself, M.A. had beaten the child with a belt in the past. Based upon this information the agency filed neglect allegations against respondent, on the theory of excessive corporal punishment. Derivative neglect allegations with respect to B.L. were also filed.
Respondent was arrested by the police. She was charged with assault in the second degree, in violation of Penal Law § 120.05.
When respondent was arraigned in Family Court, the children were released to their nonrespondent biological father, and an order of protection was issued requiring respondent to stay away from the children except for supervised visitation (the agency had discretion to name a supervisor for that visitation) and permitting phone contact between the mother and her children.
M.A. met with ACS and consented to participate in a service plan voluntarily, prior to any fact-finding in the case. ACS recommended that she enter into and complete parenting skills and anger management. Information provided at the first conference on January 24, 2012 showed that respondent was engaged in those services. In addition, the agency referred the children to counseling, and they were engaged.
On March 12, 2012, in advance of the scheduled fact-finding date, respondent mother submitted to the court’s jurisdiction pursuant to Family Court Act § 1051 (a), permitting the court to enter a finding of neglect against her without any admission of guilt. The court ordered an investigation and report and adjourned the case for disposition.
*580 On April 23, 2012, respondent appeared in court for disposition and ACS presented the court with an investigation and report. That report indicated that prior to the initiation of this case, both children had resided with their mother since birth. E.L. is currently seven years old and B.L. is eight. M.A. has been completely compliant with the service plan and has completed both parenting skills and anger management. She expressed remorse for having disciplined E.L. so harshly, but explained that he had stolen something and that she has two brothers incarcerated for various theft related charges, and she was trying to insure that he would not follow that path. M.A. acknowledged that based upon her participation in services, she had learned new methods of discipline that she would use, were the children returned to her care.
Both children were interviewed as part of ACS’s investigation and report. While their father is providing them with appropriate care, both wish to return to live with their mother full time. E.L. acknowledged that his stealing had precipitated the incident. Both children are meeting all milestones, but are sad to be separated from their mother, and have been diagnosed with adjustment disorder, for which they are receiving counseling. E.L. is pending a possible diagnosis of ADHD.
In the same investigation and report, the ACS reported that the Criminal Court case had been completed. The court has confirmed that respondent mother pleaded guilty to endangering the welfare of a child, in violation of Penal Law § 260.10, a class A misdemeanor. She was sentenced to a conditional discharge, with requirements that she complete parenting skills and anger management. She was also sentenced to a five-year order of protection which required that during that time she have no contact with E.L.
While the investigation and report recommended a release to the nonrespondent father, colloquy in court made clear that the agency, based upon respondent mother’s meaningful participation in services, supported a return of the children to the mother, with ACS supervision. The children’s attorney also supported such a disposition, as did respondent mother. However, ACS articulated its concern that the agency could not recommend such a disposition with an outstanding Criminal Court order of protection that was a full stay away.
The court agreed with ACS, and stated on the record that the court could not issue any order returning the children to the mother while there was a full stay away order of protection *581 from Criminal Court, since such a return would violate the outstanding Criminal Court order. Indeed, the order described in court on April 23, 2012 prohibited any contact between E.L. and his mother, so that even the ongoing supervised visitation permitted by the Family Court orders violated the Criminal Court order. The court suggested that the parties return to Criminal Court, advise that court of respondent mother’s cooperation in services, and request a modification of the Criminal Court order that would allow the Family Court discretion to reunify the family.
On May 7, 2012, respondent mother returned to Criminal Court where she provided proof that she had completed the parenting skills and anger management programs which were required.
On May 8, 2012, the parties returned to Family Court, and advised that the Criminal Court had modified the final order of protection. The modified final order of protection provides:
“[M.A.], Defendant, Stay away from [E.L.] and from his home, school, business, place of employment. Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with [E.L.]. Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, or any criminal offense against [E.L.]. No third party contact. Subject to Family Court. It is further ordered that this order of protection shall remain in force until and including 2-13-17.”
The Criminal Court order of protection was dated May 7, 2012.
On May 8, 2012, ACS, on the record, modified its dispositional recommendations and asked that the Family Court release B.L. to her respondent mother with 12 months ACS supervision; release E.L. to his nonrespondent father with 12 months ACS supervision; that respondent mother insure B.L. continue in individual therapy until successfully discharged; that respondent mother visit E.L. regularly supervised at agency discretion; that respondent mother cooperate with family therapy with E.L. and B.L. until successfully discharged; and a 12-month final order of protection preventing respondent mother from using any corporal punishment upon the children.
Respondent mother and the children’s attorney argued that separating the children was not in the children’s best interests. *582 They urged the court to read the Criminal Court’s order, “subject to Family Court,” as authorizing this court to release both E.L. and B.L. to their mother’s custody with ACS supervision and a final order of protection which forbade respondent mother from using any corporal punishment. The agency made clear that its recommendations were its best attempt to reconcile the Criminal Court orders with respondent mother’s cooperation in services. Again, in colloquy, the agency supported return of both children to respondent mother.
The court finds that based upon respondent mother’s full cooperation in services, her interaction with the children during supervised visitation as reported to the court, and with an order of protection prohibiting the use of corporal punishment upon the children, it would be safe to return the children to respondent mother’s care, and indeed, that it would be in the children’s best interests to return to their mother.
However, there is an outstanding final order of protection which prohibits any contact between respondent mother and her seven-year-old son, until that child reaches the age of 12. Strictly as a matter of law and jurisprudence, the Family Court is without power to overrule an order issued by the Criminal Court. Adding the language “subject to Family Court” does not change that black letter law.
“Subject to Family Court” as handwritten onto the printed Criminal Court order of protection form is shorthand for “subject to subsequent Family Court orders of custody and visitation.” There is a view that when Criminal Court issues a full stay away order of protection in a family offense case, and adds the terminology “subject to subsequent Family Court orders of custody and visitation,” that Family Court is then given jurisdiction to, in essence, overrule the Criminal Court, and return custody of the protected party to the defendant. There is no controlling case law proffered to support such a reading. The parties urge the court to adopt such a view in adjudicating this litigation. However, this court does not share that view.
Indeed, this court finds that such a reading is completely contrary to any rule of statutory or legal construction and as a practical matter renders the Criminal Court order of protection meaningless. If the Family Court can overrule a Criminal Court full stay away order of protection, by returning the protected party to the defendant against whom there is a full stay away order of protection, while that stay away order of protection is *583 in full force and effect, how can any protected party with such an order ever secure police assistance to enforce his/her order of protection? Such a reading would require any police officer to insure that there were no current Family Court orders overruling the Criminal Court order. It would reduce an order of protection to a mere piece of paper. Given the importance of orders of protection in addressing domestic violence and child abuse, such a result cannot be supported. It is not and cannot be the law.
The only case law this court could find on point is a federal decision based upon a false arrest case brought by an individual who was arrested by the police because he violated a full stay away order of protection from Criminal Court, which was subject to Family Court orders. He claimed that he was abiding by the Family Court order allowing him phone contact and visitation with his child. The summary judgment motion to dismiss his case in favor of the police who arrested him was granted. The federal judge noted,
“[t]he face of the Orders of Protection did not necessarily give defendants notice that plaintiff might be relieved of some of the specific prohibitions that it included. To the contrary, the form used provided for ‘[s]pecific conditions that defendant must observe,’ implying, with the inserted language ‘subject to Family Court Orders,’ that there might be more prohibitions imposed on plaintiff by the Family Court — conditions that plaintiff ‘must observe’ — not less.” (Little v Massari, 526 F Supp 2d 371, 375-376 [ED NY 2007].)
Criminal Court orders and Family Court orders must harmonize in a common sense way that is apparent to the parties, as well as to any law enforcement called upon to mediate an incendiary dispute. In this court’s view, a full stay away order of protection issued by Criminal Court “subject to Family Court” carves out a limited exception to the full stay away provisions that permits the Family Court to allow parent and child contact to continue and mend their relationship through supervised visitation. If that supervised visitation takes place at the agency, there will be no issue with respect to compliance with court orders. However, respondent’s compliance with services suggests that she and the subject child should enjoy additional contact over and above what might be possible at an agency. Under these circumstances, visitation supervised by an individual approved by the agency and the children’s attorney, upon a schedule that names the supervisor, the dates and times of the *584 visitation and the places where it is expected that such visitation would take place, would set appropriate limits consistent with a full stay away order of protection, the mother’s compliance and the child’s safety, yet still be easily interpreted by law enforcement should there be need to involve them. This court directs the agency to undertake making such a schedule and directs all parties to carry that schedule with them so that there are no misunderstandings with respect to contact with the children. In this court’s view, where there is a full stay away order of protection from Criminal Court, such as the one quoted above, even when it is “subject to Family Court,” unsupervised visitation, overnight visitation, and any return of the child who is the protected party to the defendant who is the subject of that order of protection, is prohibited by the very terms of the Criminal Court order of protection.
There is an additional complication to adopting the parties’ position in this litigation. Family Court orders of protection involving the biological children of a respondent are only permitted to run concurrently with ACS supervision. (Family Ct Act § 1056 [1].) ACS supervision may be imposed for a maximum of 12 months at a time; any extension must be applied for before the court and supported by good cause shown. (Family Ct Act § 1052 [a] [v]; § 1057; Matter of Sheena D., 8 NY3d 136 [2007].) Were the court to follow the recommendations of the parties and release E.L. to his mother with 12 months of ACS supervision, one would hope that the family would do well and that supervision could be completed in that 12-month period. However, if the family did well, and supervision terminated, the only order in effect would be the five-year full stay away Criminal Court order of protection, which would continue in effect for three to four more years. Despite the “success” of the service plan, the child’s residence with his mother would be illegal and subject to criminal prosecution for contempt. This is not a result which can be endorsed by anyone supporting a rule of law.
The parties do have recourse. They may return to Criminal Court and seek to modify the terms of the order of protection so that the full stay away terms are deleted, leaving “[r]efrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, *585 intimidation, threats, or any criminal offense against [E.L.].”* Or, the Criminal Court order of protection could be modified to delete its current terms and replace them with an order that prohibits M.A. from using any corporal punishment upon E.L. Either order would provide E.L. with protection, but still allow him to return to his mother.
Without such a modification, however, and based upon the evidence before the court, the court issues the following order of disposition, consistent with the law, and in the best interests of the subject children:
1. Subject children are released to their nonrespondent father with 12 months of ACS supervision. The court does not find that it is in the children’s best interests to be separated, and so denies the agency’s application to release B.L. to her mother and E.L. to his father.
2. Respondent mother to cooperate with reasonable referrals made by ACS, including but not limited to family therapy.
3. Respondent mother to visit regularly with the children, consistent with the current Criminal Court orders: as to B.L. (who is not a protected party and is not mentioned in the Criminal Court order), visitation supervised or unsupervised at agency discretion. As to E.L., visitation supervised by a resource approved by the agency and the child’s attorney, on a schedule to be worked out in conference among the mother, the father, the resource who will be supervising the visitation, and the child, or his representative, such schedule to be kept by the agency, the mother and the father. In no event is visitation between E.L. and his mother to include unsupervised visitation or overnight visitation. Final order of protection: respondent mother is not to use any corporal punishment upon either of the children. Twelve months.

 As an aside, the court does not favor orders of protection using this language in child protective matters, as there are many acts of appropriate parenting which may be viewed by a child as “harassment.”